UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-20868-GAYLES/TORRES

**INFINITY AUTO**
**INSURANCE COMPANY,**

    Plaintiff,

v.

**MD ROYAL GROUP, LLC d/b/a**
**UNITED ROYAL VAN LINES**
**and ALLAN NOWAK,**

    Defendants.

_____/

# ORDER

**THIS CAUSE** comes before the Court on Plaintiff Infinity Auto Insurance Company's Amended Cross-Motion for Final Summary Judgment ("Plaintiff's Motion"), [ECF No. 133], and Defendant Allan Nowak's Amended Motion for Final Summary Judgment ("Defendant's Motion"), [ECF No. 109]. The Court has reviewed the Motions and the record and is otherwise fully advised. For the reasons that follow, both Motions are **DENIED**.

## I.   BACKGROUND[1]

This action seeks to resolve whether Plaintiff Infinity Auto Insurance Company ("Infinity") is responsible for covering property damage and loss Defendant Allan Nowak ("Nowak")

---

[1] The undisputed facts, unless otherwise noted, are taken from Plaintiff's Statement of Material Facts [ECF No. 122]; Defendant's Response to Plaintiff's Statement of Material Facts [ECF No. 128]; Plaintiff's Reply to Defendant's Statement of Additional Material Facts [ECF No. 130]; Defendant's Statement of Material Facts [ECF No. 110]; Plaintiff's Response to Defendant's Statement of Material Facts [ECF No. 112]; Defendant's Reply Statement of Material Facts to Plaintiff's Statement of Additional Facts [ECF No. 119]; and a review of the corresponding record citations and exhibits.

1

sustained when using Defendant MD Royal Group, LLC's ("MD Royal") services to move his belongings.

Infinity issued a Commercial Auto Policy of insurance to MD Royal, Policy No. 509-68939-5589-001 (the "Policy") which provides a $1,000,000 limit of liability for bodily injury and property damage, subject to the Policy's terms and conditions, with an effective term of coverage from March 7, 2014, to March 7, 2015. The Policy has provisions regarding (1) timely notice of a claim or lawsuit, and (2) cooperation with an investigation of a loss. The relevant sections of the Policy read as follows:

> **YOUR DUTIES IN CASE OF ACCIDENT OR LOSS**
>
> In the event of an accident or loss, you or any person claiming coverage under this policy must:
>
> 1. Notify us promptly. **You** or someone from you must notify us within thirty (30) days, or when practicable. **You** must call our claims office during business hours or our Claims Hotline, available twenty-four (24) hours a day, seven (7) days a week. This notice must give the time, place and circumstances of the **accident** or **loss.** Such notice must also give the license plate numbers of the vehicles involved, and the names and addresses of injured persons and witnesses. **YOUR FAILURE TO PROMPTLY REPORT A LOSS OR ACCIDENT TO US JEOPARDIZES YOUR COVERAGE UNDER THIS POLICY.**
>
> 2. Cooperate with us in any matter concerning a claim or suit. No obligations shall be assumed, costs insured or voluntary payments made by an **insured** except at the **insured's** own cost unless the obligation or cost is to protect **your insured auto.**
> \* \* \*
> 8. Send us promptly any legal papers received to any claim or suit.
> \* \* \*
> 10. Allow us to take signed or recorded statements when and as often as we may reasonably require.
> \* \* \*
> **YOUR FAILURE TO COMPLY WITH ANY OR ALL OF THE CONDITIONS ABOVE MAY RESULT IN OUR REFUSAL TO EXTEND TO YOU ANY PROTECTION UNDER THIS POLICY FOR THE ACCIDENT OR LOSS.**

[ECF No. 5-1 at 3].

On or about February 27, 2015, Nowak hired MD Royal to move his personal belongings from his apartment in Sunny Isles, Florida, to his new residence in Aventura, Florida. During the move, Nowak's property was damaged, lost, and/or stolen while in the possession of MD Royal (the "Claim"). Nowak claims that, on August 3, 2016, his attorney sent a letter via certified mail and U.S. mail to Florida's Chief Financial Officer, "on behalf of Infinity," regarding a "claim of loss of goods" and requesting a copy of the Infinity Policy. [ECF No. 118-1]. Infinity disputes receiving this letter.

Nowak also claims that on August 11, 2016, his attorney sent a letter to Infinity via certified mail (Certified/RRR 7004 1350 0003 3985 5276) and U.S. mail (the "August 2016 Letter"). The August 2016 Letter is addressed to Infinity and notes that it is regarding Nowak's "claim of loss of goods sustained as a direct result of moving services provided to Mr. [Nowak] by [Infinity's] insured, MD Royal Group LLC dba United Royal Van Lines, on or about February 27, 2015." [ECF No. 118-1 at 10]. Infinity disputes the authenticity of the August 2016 Letter[2] and claims it has no record of receiving it until a copy was provided by Nowak years later. *See* [ECF No. 113 at 11]. The Domestic Return Receipt provided by Nowak (PS Form 3811) notes that the August 2016 Letter was received at the "Infinity Insurance Mailroom" on August 17, 2016. [ECF No. 118-1 at 11].

On May 4, 2017, Nowak filed a lawsuit in state court against MD Royal for the damages he sustained as a result of MD Royal's failure to safely move his belongings (the "Underlying Lawsuit"). On June 29, 2017, Nowak filed a Return of Non-Service in the Underlying Lawsuit, stating that various searches for MD Royal were performed and that MD Royal could not be

---

[2] While the August 2016 Letter was initially unauthenticated, in subsequent filings, Nowak provided the necessary documentation certifying the authenticity of the letter. *See* [ECF No. 120].

located.[3] Because Nowak was unable to serve MD Royal in the Underlying Lawsuit, he effectuated substitute service through Florida's Secretary of State on or about October 19, 2017. On August 21, 2019, Judge Pedro P. Echarte granted Final Summary Judgment in favor of Nowak and against MD Royal in the Underlying Lawsuit (the "Final Judgement"). [ECF No. 55-3]. Judge Echarte awarded Nowak $408,241.00 in damages plus interest at the statutory rate. *Id.*

On November 6, 2019, Nowak sent another letter to Infinity via certified and U.S. regular mail, notifying it of the Final Judgment entered against its insured, MD Royal (the "November 2019 Letter"). Infinity does not dispute receiving the November 2019 Letter. However, Infinity claims that the letter did not provide it with sufficient information to identify the pending claim; therefore, it requested additional information from Nowak. [ECF No. 113 at 11]. On June 18, 2020, at the request of Infinity's affiliate, Kemper, Nowak sent another letter to Infinity/Kemper with additional information via certified and U.S. regular mail. From July 2020 to September 2020, Infinity made "extensive efforts" to contact MD Royal regarding the Claim and Underlying Lawsuit, but it was unsuccessful. In October and November of 2020, Infinity retained two separate outside investigative services to try and locate MD Royal. Neither company was able to determine MD Royal's whereabouts.

---

[3] According to the Return of Non-Service, the condominium manager of a residence associated with MD Royal contacted an acquaintance of MD Royal's agent and learned that he had been deported to Russia. [ECF Nos. 110 at 97; 122 ¶ 11]. The Return of Non-Service also states that in May 2017 the property manager and security of another residence associated with MD Royal said that the agent of MD Royal had "moved to Ukraine." *Id.* Nowak relies on these representations in support of his argument that MD Royal was excused from having to comply with the notice and cooperation provisions of the Policy because it did not have notice of the loss prior to leaving the country. Infinity does not contest that the Return of Non-Service contains these representations. *See* [ECF No. 122 ¶ 11]. Rather, Infinity objects to the consideration of these representations in determining whether MD Royal's notice or cooperation was excused; arguing that the statements in the Return of Non-Service constitute inadmissible hearsay. [ECF No. 113 at 16 n.22]. Additionally, Infinity argues that Nowak's unavailability argument is contradicted by the representations Nowak made in the Underlying Lawsuit. *See Id.* ¶ 9; [ECF No. 113 at 17-18]. Because the Court ultimately finds that there are disputed issues of fact as to whether MD Royal received notice of the claim, the admissibility of the condominium manager's statements need not be determined at this juncture.

On March 4, 2021, Infinity filed this three-count declaratory judgment action against Nowak and MD Royal seeking a finding that Infinity has no duty to indemnify MD Royal or provide coverage for Nowak's loss. In Count I, Infinity seeks a declaration that coverage is precluded due to MD Royal's failure to provide timely notice of the Claim or Underlying Lawsuit. In Count II, Infinity seeks a declaration that coverage is precluded due to MD Royal's failure to cooperate with Infinity's investigation of the loss. In Count III, Infinity seeks a declaration that coverage was precluded under an exclusion provision of the Policy. On April 18, 2023, the Court granted Nowak's Motion for Final Summary Judgment as to Count III of the Amended Complaint. Thereafter, Infinity and Nowak filed the instant cross-motions for summary judgment on Infinity's remaining claims.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (citation omitted). Furthermore, conclusory allegations will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment. *See, e.g.*, *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (citations omitted). "A district court's disposition of cross-motions for summary judgment employs the same legal standards applied when only one party files a motion." *Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc.*, 80 F. Supp. 3d 1311, 1316 (S.D. Fla. 2015) (citation omitted).

Under Florida law, for an insurer to refuse coverage due to untimely notice or failure to cooperate, it must show that the provision was breached (*e.g.*, notice was untimely, or no cooperation was given) and that the breach resulted in prejudice. *Allstate Fire & Cas. Ins. Co. v. Duong Thanh Ho*, No. 11-60724-CIV, 2012 WL 442980, at *9 (S.D. Fla. Feb. 10, 2012). At summary judgment, an insurer enjoys a rebuttable presumption of prejudice when it has made a sufficient showing of untimely notice. *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 599 F. App'x 875, 881 (11th Cir. 2015). Therefore, "[t]he burden is 'on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts.'" *Id.* (quoting *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla.1985)). The burden is different for a breach of a cooperation provision. When an insurer seeks to avoid coverage due to an insurer's lack of cooperation, the insurer has the additional burden of showing

prejudice. *Nat'l Indem. Co. of the S. v. MA Alternative Transp. Servs., Inc.*, No. 6:19-CV-13-RBD-LRH, 2021 WL 5882616, at *6 (M.D. Fla. July 29, 2021), *aff'd*, No. 22-11881, 2023 WL 354742 (11th Cir. Jan. 23, 2023); *Coconut Key Homeowners Ass'n, Inc. v. Lexington Ins. Co.*, 649 F. Supp. 2d 1363, 1369 (S.D. Fla. 2009); *Duong Thanh Ho*, 2012 WL 442980, at *9 ("In the context a cooperation clause claim—unlike a delayed notification claim—it is the insurer who has the burden of showing substantial prejudice.").

Whether an insured has overcome the presumption of prejudice caused by late notice and whether an insurer has sufficiently shown it was prejudiced by a lack of cooperation are generally fact-intensive determinations that should be reserved for the jury. *See Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC,* 601 F.3d 1143, 1150 (11th Cir. 2010); *MA Alternative*, 2021 WL 5882616, at *10 ("Under Florida law, the issue of prejudice is generally reserved for the trier of fact."); *Guzy v. QBE Specialty Ins. Co.*, No. 18-24691-CIV, 2019 WL 4694162, at *5 (S.D. Fla. June 20, 2019) ("The issue of whether her compliance was sufficient or a material breach is a matter for a jury.").

### III.  DISCUSSION

Infinity and Nowak do not dispute that (1) MD Royal damaged and/or lost Nowak's property while in MD Royal's care, custody, or control; (2) at the time of the loss, Infinity insured MD Royal pursuant to the Policy; and (3) MD Royal, as the insured, did not provide notice to Infinity or cooperate with Infinity's investigation of the claim. Instead, Infinity and Nowak dispute whether the terms of the Policy are impermissibly vague and whether Infinity was sufficiently prejudiced by the breaches of the Policy to relieve it from providing coverage.

Infinity's Motion raises three bases for summary judgment. It argues that MD Royal's failure to (1) provide timely notice of the Claim, (2) provide notice of the Underlying Lawsuit, and

(3) cooperate with Infinity's efforts to investigate the Claim sufficiently prejudiced Infinity as to preclude coverage as a matter of law. Conversely, Nowak argues that Infinity cannot avoid coverage because (1) the Policy's notice and cooperation provisions are ambiguous; (2) Infinity has not been prejudiced by the alleged failure to provide prompt notice or by the lack of cooperation; (3) any prejudice experienced by Infinity was a result of its own inaction; and (4) MD Royal could not have cooperated because it never had notice of the claim or lawsuit.

Whether the policy provisions are impermissibly vague is a threshold issue; therefore, the Court will take-up this issue first. Because there is no dispute that MD Royal did not provide notice to Infinity or cooperate with its investigation, the Court will then consider whether Infinity was substantially prejudiced by MD Royal's inaction or whether MD Royal's cooperation could have been excused.

### A.   Policy Ambiguities as to Notice and Cooperation

Under Florida law, the interpretation of an insurance policy is a question of law to be decided by the court. *Canal Indem. Co. v. Margaretville of NSB, Inc.*, 562 F. App'x 959, 961 (11th Cir. 2014). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (citation and internal quotation marks omitted). "Insurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007) (quoting

*Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). "A provision is not ambiguous simply because it is complex or requires analysis." *Id*.

Nowak concedes that under the Policy the insured "must" notify the insurer "within thirty (30) days" of an accident or loss and "must" do so by calling the insurer's claims office or hotline. [ECF No. 109 ¶ 12]. Despite this, Nowak argues the Policy is ambiguous as to whether timely notice of a claim is required. Nowak argues four separate but interrelated reasons for finding the policy provisions ambiguous as to notice. First, Nowak argues that the policy states that a failure to comply with the notice requirement will only "jeopardize" coverage, not preclude it. Second, Nowak points to another provision stating that a failure to comply with a provision "MAY RESULT" in a refusal of coverage. Nowak argues the use of the term "MAY RESULT" "leaves open the question whether notice is an absolute condition to coverage." *Id*. ¶ 15. Third, Nowak argues that the Policy's inclusion of the undefined terms "prompt" and "jeopardize" renders the policy ambiguous on its face. Fourth, Nowak argues that the Policy "fails to define the guidelines Infinity uses to determine what 'jeopardizes' coverage." *Id*. ¶ 17.

Importantly, Nowak does not provide any case law to support these arguments. Instead, he cites to a single inapposite case, *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 412 F.3d 1224, 1228 (11th Cir. 2005), for the general proposition that ambiguities must be construed in the favor of the insured. While the Court does not take issue with this proposition, the Court disagrees that the use of the undefined terms "jeopardize" or "prompt" renders the notice provisions ambiguous. The court's holding in *Sphinx Int'l* weakens Nowak's position rather than bolster it. In *Sphinx Int'l*, the Eleventh Circuit rejected the litigant's argument that inclusion of undefined terms rendered the policy ambiguous, noting that such an argument "demands too much." 412 F.3d at 1229; *see also Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1139 (Fla. 1998)

("We also reject the argument that because the words 'irritant' and 'contaminant' are not defined, the policy exclusion is ambiguous."); *Jefferson Ins. Co. v. Sea World*, 586 So. 2d 95, 97 (Fla. 5th DCA 1991) ("The mere failure to provide a definition for a term involving coverage does not necessarily render the term ambiguous.").

The Court also finds that use of the term "MAY RESULT" does not make the Policy ambiguous as to whether notice or cooperation are conditions precedent to coverage. Florida courts "will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so." *Moore v. State Farm Mut. Auto Ins. Co.*, 916 So. 2d 871, 877 (Fla. 2d DCA 2005). As the Court noted at the outset, the Policy is clear that the insured "must" notify the insurer "within thirty (30) days" of an accident or loss and "must" do so by calling the insurer's claims office or hotline. [ECF No. 109 ¶ 12]; *see also MRC Pool Repair & Servs. LLC v. Infinity Assurance Ins. Co.,* No. 1:22-CV-21887, 2023 WL 11885990, at *4 (S.D. Fla. Sept. 25, 2023) (finding same policy language established a post-loss obligation that "requires" an insured to cooperate with Infinity in its investigation of a claim). Because Plaintiff has not shown that the Policy is ambiguous, the Court denies summary judgment on that basis.

### B. Prejudice Due to Untimely Notice of Claim or Lawsuit

Whether an insured's failure to provide timely notice of a loss "is sufficient to result in the denial of recovery under the policy implicates a two-step analysis." *Yacht Club*, 599 F. App'x at 879 (quoting *LoBello v. State Farm Fla. Ins. Co.*, 152 So. 3d 595, 599 (Fla. 2d DCA 2014)). The Court must first determine "whether the insured provided timely notice." *Id.* If timely notice was not given, "prejudice to the insurer is presumed, but that presumption may be rebutted" by the insured. *Id.*

Infinity argues that the terms of the Policy set out two separate notice requirements: notice of a "claim" and notice of a "suit."[4] Infinity correctly notes that this court and others have previously recognized these as distinct requirements in insurance policies. *See Hamid Mohebbi Pharm.D v. Founders Ins. Co.*, 41 F. Supp. 3d 1412, 1416 (S.D. Fla. 2014) ("Accordingly, the insured had two distinct duties: (1) to notify Defendant of any claims and (2) to notify Defendant of any lawsuits filed which may implicate the insurance policy."). Nowak does not dispute this, nor does he separately address the untimely notice of the Underlying Lawsuit. Regardless, the same two-step framework applies to both notice provisions. *See Eastpointe Condo. I Ass'n, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 664 F. Supp. 2d 1281, 1286 (S.D. Fla. 2009), *aff'd*, 379 F. App'x 906 (11th Cir. 2010) (applying two-step framework to lawsuit notice requirement).

Infinity argues that it experienced separate prejudices from not receiving notice of the Claim and Underlying Lawsuit.[5] Infinity correctly notes that because MD Royal did not provide it with notice of the Claim or Underlying Lawsuit, the Court must presume that Infinity has been prejudiced. *Id.* Therefore, the Court must determine whether Nowak has rebutted the presumption of prejudice as to notice of the Claim and the Underlying Lawsuit. *Id.*; *Lexington Ins. Co.*, 599 F. App'x at 881. The Court will analyze each in turn.

---

[4] The relevant section of the Policy states: "In the event of an accident or loss, you or any person claiming coverage under this policy must: . . . Send us promptly any legal papers received to any claim or suit." [ECF No. 5-1 at 3] (emphasis added).

[5] Infinity argues that the lack of timely notice of the Claim resulted in it not being able to independently verify the alleged vehicular accident that may have precipitated the loss. It also argues that it was never able to confirm with the insured whether items were stolen, which would have given Infinity a legal basis for denying recovery under the policy. Regarding the lack of timely notice of the Underlying Lawsuit, Infinity states that it was prejudiced by being "(1) unable to discuss or verify any facts of the Claim with MD ROYAL, (2) unable to determine from MD ROYAL how the alleged property was lost, damaged or stolen, (3) unable to determine from MD ROYAL if an auto accident had occurred and caused the alleged property damage and, if so, how and where that accident took place (and who was deemed at fault), (4) unable to verify the Claimant's alleged damages with MD ROYAL's own business records and accounts, (5) unable to determine if any subrogation interests existed, (5) unable to undertake defense of MD ROYAL and to seek to reduce or eliminate the Insured's liability with respect to the Claim, [and] (6) unable to determine if, based upon the underlying facts, there was responsive coverage for some or all of the alleged loss, among many others." [ECF No. 133 at 11].

11

1. Notice of Claim

Although Infinity did not receive notice from MD Royal, Nowak presents the August 2016 Letter to show that his counsel sent Infinity notice of the Claim nine months prior to commencement of the Underlying Lawsuit. Although Infinity disputes receiving the August 2016 Letter, the Court finds that Nowak has done enough to create a disputed factual record as to whether MD Royal's failure to provide timely notice of the Claim was prejudicial to Infinity. *Duong Thanh Ho*, 2012 WL 442980, at *8 (finding disputed issues of fact precluded summary judgment on untimely notice provided by counsel).

Infinity argues that, even assuming the August 2016 Letter put it on notice, it was still prejudiced as a matter of law because it was sent almost a year and a half after the date of the loss. For support, Infinity cites to *Leeds v. First Mercury Ins. Co.*, where the Court held that a six-month delay was "unreasonable as a matter of law." *Leeds v. First Mercury Ins. Co.*, No. 10-22729-CV, 2011 WL 2971228, at *5 (S.D. Fla. July 20, 2011). However, the court in *Leeds* did not find that a six-month delay establishes prejudice as a matter of law; rather, the court noted that "even if [] notice was untimely, [insurers] are still required to cover [an insureds'] claim so long as [the insurers] were not prejudiced." *Id.* at *6; *see also Stark v. State Farm Fla. Ins. Co.*, 95 So. 3d 285, 288 (Fla. 4th DCA 2012) ("Whether the presumption of prejudice to the insurer has been overcome is ordinarily a separate issue of fact.") (cleaned up). In *Leeds*, the prejudice inquiry centered around whether the "delay prevented [the] [insurer] from investigating the [] claims to its satisfaction or participating meaningfully in either [the insured's] defense or in the settlement of [the] claims." *Id.*; *see also Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co., Ltd.*, 2012 WL 266438, at *4 (S.D. Fla. Jan. 30, 2012) ("An insurer is prejudiced by untimely notice when the underlying purpose of the notice requirement was frustrated by the late notice.") (internal citation and

quotation marks omitted). Because there are disputed issues of fact regarding whether and when Infinity was given notice of the Claim and whether it was prejudiced by that late notice, summary judgment is improper.

2. Notice of Lawsuit

As to the Underlying Lawsuit, Infinity argues that Nowak cannot rebut the presumption of prejudice because Infinity only received notice of the Underlying Lawsuit after the Final Judgment was entered. Nowak argues that Infinity was not prejudiced by the lack of notice from MD Royal because any prejudice it experienced was a result of its own delay.[6] Disputed material facts also preclude summary judgment on this issue.

"When, as here, an insured fails to notify its insurer of a suit and a default judgment results, the insurer is not prejudiced if it had a viable opportunity to set aside the default or if the insurer was aware of the suit and refused to act." *Hamid*, 41 F. Supp. 3d at 1417. In *Hamid*, the case Infinity primarily relies on, the court found that the insurer was prejudiced by untimely notice of a lawsuit when it "did not know of the lawsuit until approximately eleven months after the one-year window to set aside the judgment closed." *Id.* at 1418. The court reasoned that "by the time [the] [insurer] received notice, there was no opportunity for it to set aside the judgment." *Id.* The same is not true here.

Nowak has put forth evidence to show that Infinity was on notice of the Final Judgment within three months after it was entered against MD Royal. Infinity concedes this. *See* [ECF No. 133 at 10]. Nowak's November 2019 Letter would have provided Infinity with approximately nine

---

[6] Nowak also argues, in passing, that because the Policy does not define the term "prompt" it must be construed in his favor. However, as previously noted, the Court rejects Nowak's attempt to cast the Policy's notice provision as impermissibly ambiguous. "[U]nder Florida law, 'prompt,' 'as soon as practicable,' 'immediate,' or comparable phrases have been interpreted to mean that notice should be given 'with reasonable dispatch and within a reasonable time in view of all of the facts and circumstances of the particular case.'" *Yacht Club*, 599 F. App'x at 879 (quoting *State Farm Mut. Auto. Ins. Co. v. Ranson*, 121 So. 2d 175, 181 (Fla. 2d DCA 1960).

13

months to move to set aside the Final Judgment entered against MD Royal in the Underlying Lawsuit. *See* Fla. R. Civ. P. 1.540(b); *Hamid*, 41 F. Supp. 3d at 1418 (noting that, under Florida's Rules of Civil Procedure, the insurer had one year from the date of judgment to move to set it aside). This timeline is significantly different from the one before the court in *Hamid* and more analogous to the situations presented in *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Harris*, 197 So. 2d 567 (Fla. 3d DCA 1967) and *Indem. Ins. Corp. of DC. v. Caylao*, 130 So. 3d 783, 787 (Fla. 1st DCA 2014), both of which are cited in *Hamid*. In distinguishing *Harris* and *Caylao*, the court in *Hamid* underscored that the "time difference" between the cases "[wa]s a crucial distinction." *Hamid*, 41 F. Supp. 3d at 1418. In *Harris*, the "District Court of Appeal found that the insurance company's opportunity to intervene four months after entry of a default judgment meant that the company was not prejudiced." *Id.* (citing *Harris*, 197 So. 2d at 570). In *Caylao*, the District Court of Appeal found the same when "the opportunity to intervene came one month after entry of judgment." *Id.* (citing *Caylao*, 130 So. 3d at 787-88).

Moreover, the other case Infinity relies on, *Nat'l Indem. Co. of the S. v. MA Alternative Transp. Servs., Inc.*, No. 22-11881, 2023 WL 354742, at *2 (11th Cir. Jan. 23, 2023), goes against its own arguments for summary judgment based on prejudice. In *MA Alternative*, the Eleventh Circuit affirmed the district court's decision to <u>deny</u> summary judgment on the prejudice issue when, as here, there were disputed issues of fact on whether "the [i]nsurance [c]ompany had an opportunity to vacate the default judgment, but ineffectively pursued that opportunity in state court." *Id.* at *1. Whether Infinity was sufficiently prejudiced by the delayed notice is a disputed issue of fact that is properly resolved by a trier of fact. *See MA Alternative*, 2023 WL 354742, at *2; *Monterey at Malibu Bay Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 20-CV-24587, 2022 WL 1299974, at *10 (S.D. Fla. Apr. 29, 2022).

### C. Prejudice Due to MD Royal's Failure to Cooperate

To prevail on a claim based on the breach of a cooperation clause, the insurer must show that it was substantially prejudiced by a material failure to cooperate. *Macias*, 475 So. 2d at 1218; *Barthelemy v. Safeco Ins. Co. of Illinois,* 257 So. 3d 1029, 1031 (Fla. 4th DCA 2018) (finding that a "failure to cooperate" defense case requires a showing of materiality and substantial prejudice). "Furthermore, an insurer may only avoid its obligation to pay 'where the insurer has exercised diligence and good faith in seeking to bring about the cooperation of the insured, and where the insurer has in good faith complied with the terms and conditions of the policy.'" *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1150 (11th Cir. 2010) (quoting *Ramos v. Nw. Mut. Ins. Co.*, 336 So. 2d 71, 75 (Fla. 1976)).

"[T]he question of whether the failure to cooperate is so substantially prejudicial as to release the insurance company of its obligation is ordinarily a question of fact, but . . . where the facts are admitted, it may well be a question of law." *Id.* (quoting *Ramos,* 336 So. 2d at 75). A "total failure" to cooperate may preclude recovery as a matter of law. *Haiman v. Federal Ins. Co.*, 798 So. 2d 811, 812 (Fla. 4th DCA 2001). "If, however, the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury." *Id.*; *see also Guzy,* 2019 WL 4694162, at *5 ("A total failure to comply with post-loss policy provisions may preclude recovery as a matter of law; however, if the insured cooperates to some degree or provides an explanation for its noncompliance, a factual issue exists for resolution by a jury.").

Infinity argues that MD Royal's "total non-cooperation" precludes coverage under the Policy as a matter of law. Nowak does not dispute that MD Royal did not cooperate with Infinity's investigation. Instead, he argues that (1) MD Royal's failure to cooperate did not materially

15

prejudice Infinity because Nowak cooperated with Infinity's request for information, and Nowak could have provided Infinity with information it needed from MD Royal; and (2) he has provided an explanation for MD Royal's noncompliance: that MD Royal's cooperation was impracticable given that it never received notice of the claim due to its principal's unavailability. Infinity does not dispute that Nowak provided it with information in response to its request for additional information regarding the Claim and Underlying Lawsuit. Because Nowak has put forth evidence showing that he cooperated with Infinity by providing information as requested by its agents, the Court cannot find as a matter of law that MD Royal's failure to cooperate resulted in substantial prejudice to Infinity. *Horizons Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 6:06CV418 ORL18JGG, 2007 WL 294230, at *4 (M.D. Fla. Jan. 29, 2007) ("In the instant case, Horizons has presented evidence of both some degree of cooperation and a reasonable explanation for its alleged noncompliance. Thus, the Court will deny QBE's Motion for Summary Judgment."). Whether Nowak's cooperation was sufficient as to render MD Royal's lack of cooperation immaterial or nonprejudicial is yet another factual issue for the jury. *See Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1339 (S.D. Fla. 2010), *aff'd*, 477 F. App'x 702 (11th Cir. 2012).

The parties also dispute whether MD Royal had notice of the Claim and Underlying Lawsuit and whether it had the capacity to cooperate in the first place. Nowak, citing to *Fla. Laundry Servs. Inc. v. Sage Condo. Ass'n, Inc.*, 193 So. 3d 68 (Fla. 3d DCA 2016), argues that performance under a contract can be excused by impracticability or impossibility of performance. [ECF No. 118 ¶ 30]. Infinity distinguishes Nowak's caselaw and argues that Nowak has failed to provide support for the applicability of the impossibility defense in the context of a cooperation provision. Importantly, there is limited caselaw available from Florida courts on the issue. However, there is no need to determine whether the impossibility defense is applicable here

16

because there are factual disputes about whether MD Royal had notice of the Claim and Underlying Lawsuit and whether a lack of notice provides a sufficient explanation for its non-compliance. *See Haiman*, 798 So. 2d at 812.

Lastly, the parties dispute whether Infinity acted diligently in securing MD Royal's cooperation. "[A]n insurer exercises due diligence and good faith in securing cooperation when it makes efforts to communicate with the insured and specifically instructs the insured to notify it of any developments in the underlying matter." *Cont'l Cas. Co. v. City of Jacksonville*, 283 F. App'x 686, 692 (11th Cir. 2008). Here, Nowak argues that Infinity took almost four years to request MD Royal's cooperation after receiving the August 2016 Letter. Infinity argues that it did not receive the August 2016 Letter and that it acted diligently as soon as it received subsequent letters from Nowak regarding the loss. As discussed previously, whether the August 2016 Letter sufficiently put Infinity on notice of the Claim and Underlying Lawsuit is a disputed issue of fact. Therefore, the Court finds that summary judgment is precluded on the cooperation issue, as well.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 26th day of November 2024.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record